## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made by KATERINE AVILA ("Avila"), and EL TORO LOCO, LLC and JOAQUIN MARTINEZ (together "El Toro Loco") (Avila and El Toro Loco are collectively referred to hereinafter as the "Parties").

**WHEREAS**, Avila was previously employed by El Toro Loco from April 23, 2019 through December 20, 2020;

**WHEREAS**, on or about March 26, 2021, Avila filed a lawsuit claiming an overtime violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") in the United States District Court, Southern District of Florida, entitled *Katerine Avila v. El Toro Loco LLC d/b/a El Toro Loco Churrascaria and Joaquin Martinez* Case No. 1:21-cv-21160-RNS (the "Action");

WHEREAS, El Toro Loco denies any wrongdoing and denies Avila's claims; and

WHEREAS, "El Toro Loco" shall include El Toro Loco, and their past and present incorporators, directors, officers, owners, members, agents, insurers, attorneys, employees, supervisors, managers, representatives, vendors, representatives, successors, assigns, partners, affiliates, payroll service providers, consultants, all current, past and future subsidiaries, parents, related and affiliated corporations, sister corporations, divisions, branches, and any person, partnership, corporation, association, organization or entity acting directly or indirectly in its interest, or as an employer in relation to Avila, including any person or entity acting with or on behalf of El Toro Loco, officially, or in any capacity whatsoever, past and present, their heirs, dependents, descendants, personal representatives, family members, successors, administrators, agents, assigns, and attorneys, and any other parties of interest and/or representatives past and present; and

WHEREAS, "Avila" shall include Katerine Avila and her heirs, dependents, descendants, personal representatives, family members, successors, administrators, agents, assigns, and attorneys, and any other parties of interest and/or representatives past and present; and

WHEREAS, this General Release and Settlement Agreement is between Plaintiff and Defendant and is hereinafter referred to as the "Release," the "Agreement," or the "Confidential Settlement Agreement and Release."

NOW, THEREFORE, in consideration of the covenants contained herein, the payment from and on behalf of El Toro Loco to Avila, and other valuable consideration, the receipt of which is hereby acknowledged, the Parties hereto agree as follows:

1. **Recitals**. The parties acknowledge that the "WHEREAS" clauses preceding Paragraph 1 are true and correct and are incorporated herein as material parts to this Agreement.

KA *KA*
ETC *YB*
JM *JH*

1

**Consideration**. In complete resolution of any and all claims by Avila against El Toro Loco, including, but not limited to, those alleged in the FLSA lawsuit (21-CV-21160) ("the Complaint") within ten (10) days of the after court approval and completed IRS W-9 Form executed by Avila and W-9 Forms executed by Avila's attorney, payment shall be made, by or on behalf of El Toro Loco to Avila, in the total amount of Thirty Thousand Dollars and Zero Cents ($30,000.00) inclusive of attorneys' fees and costs, in lawful money of the United States of America, receipt of which is hereby acknowledged (hereinafter referred to as the "Settlement Payment"). The Settlement Payment will be made by way of three (3) checks delivered to the office of counsel for Avila as follows: (1) A check made payable to "Katerine Avila" for $5,000.00 which is attributable to any allegations of lost wages and for which a 1099 will be issued; (2) a check made payable to "Katerine Avila" for $5,000.00 which is attributable to liquidated damages alleged by Avila and for which a 1099 will be issued and (3) a check made payable to "PEREGONZA THE ATTORNEYS, PLLC" in the gross sum of $20,000.00 representing attorney's fees in the amount of $17,000.00 and $3,000 in costs and expenses that shall be documented on an IRS Form 1099. Avila expressly agrees to be solely responsible for any tax liability that may result from payment of the Settlement Funds, and expressly acknowledges that El Toro Loco is not liable in any way for any tax consequences of this settlement.

The Settlement Payment shall be sent via overnight delivery, with a tracking number, to Avila's legal counsel, Nathaly Saavedra. Avila understands and agrees that such Settlement Payment as outlined above are in full and final satisfaction of any claim for attorneys' fees or costs arising out of or relating to the allegations against El Toro Loco in the Complaint and/or otherwise.

In the event Defendants shall fail to make any payment (either to Plaintiff or to her attorneys) when due as expressly stated, Plaintiff and her attorneys shall provide written notice of the breach to Defendants' counsel, and Defendants will have FIVE (5) business days to cure. If breach is not cured during the FIVE (5) business day cure period, Plaintiff will be entitled to obtain an automatic judgment (jointly and severally) for the entire unpaid balance of the settlement sum.

2. **Tax Indemnification.** El Toro Loco makes no representation as to the tax consequences or liability arising from the Settlement Payments described herein. Moreover, Avila understands and agrees that any tax consequences and/or liability arising from the Settlement Payments (local, state, or federal) to Avila shall be the sole responsibility of Avila except any taxes that may be due by El Toro Loco. To this extent, Avila acknowledges and agrees that she will pay any and all income tax, penalties, or interest which may be determined to be due in connection with the Settlement Payments and releases and indemnifies El Toro Loco from any liability therefrom. Avila acknowledges that she has not relied on any statements or representations by El Toro Loco with respect to the tax treatment of the Settlement Payment. Avila acknowledges that El Toro Loco is also not responsible in any way for child support payments.

KA  *KA*
ETC *JB*
JM  *JM*

3. **No Consideration Absent Execution of this Agreement**. Avila understands and agrees that she would not receive the monies and/or benefits specified in paragraph 2 above, except for her execution of this Agreement and the fulfillment of the mutual promises contained herein. The Settlement Payment and other consideration reflected in paragraph 2 of this Agreement are made in full and final settlement and resolution of the allegations in the Action and any and all claims by Avila against El Toro Loco.

4. **Attorneys Not Tax Experts.** The Parties acknowledge that any attorney involved in the preparation of this Agreement is not and has not claimed to be an expert in tax matters. Each Party states that he//she/it/they were advised to and has/have consulted or has had the opportunity to consult with a tax professional to fully evaluate the tax implications and consequences of this Agreement.

5. **Release**. Avila hereby irrevocably and unconditionally releases, acquits, remises, and forever discharges El Toro Loco and all included entities or persons listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action of whatever kind and character, in law or in equity, in contract or tort or public policy, both known and unknown, suspected or unsuspected, disclosed and undisclosed, actual and consequential, specific and general, however denominated (including, but not limited to, those arising out of, or in any way connected with, Avila's employment with El Toro Loco in any position at any time, and including, but not limited to, all claims raised in the Action), for wages, overtime pay, front or back pay, minimum wage, income from any source, declaratory or injunctive relief, lost benefits, commission, liquidated damages, compensatory or punitive damages, money, remuneration, attorneys' fees, costs, expert's fees and costs, expenses, or any other thing of value whatsoever, by Avila against El Toro Loco, including, but not limited to, claims arising under or relating to: The Florida Civil Rights Act; the Pregnancy Discrimination Act; The Americans with Disabilities Act ("ADA") The Florida Whistleblower Act; The Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act of 1990 ("OWBPA"); The Civil Rights Acts of 1866, 1871, 1964 (including Title VII of that Act), or 1991; The Florida Human Rights Act and the Florida Civil Rights Act of 1992 codified in Chapter 760 of the Florida Statutes; Article X § 24, Florida Constitution; Florida Minimum Wage Amendment; The Labor Management Relations Act of 1947; The Equal Pay Act of 1963; The Occupational Safety and Health Act of 1970; The Rehabilitation Act of 1973; The Health Maintenance Organization Act of 1973; The Immigration Reform and Control Act of 1986; The Family and Medical Leave Act of 1993 ("FMLA"); Executive Orders 11141, 11246, and 11375; 42 U.S.C. § 1982, § 1983, § 1985, or § 2000; The Americans with Disabilities Act ("ADA"), as amended, including as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"); The Consolidated Omnibus Reconciliation Act ("COBRA"); The Employee Retirement Income Security Act of 1974 ("ERISA"); and claims for damages, injuries, illnesses, or complications now known or that may later be discovered, including all effects and consequences thereof; The Internal Revenue Services Code; Chapter 448, Florida Statutes; Chapter 440, Florida Statutes, including, but not limited to, § 440.205; Chapter 442, Florida Statutes; The Fair Credit Reporting Act; Chapters 110, 381, 442, 760, and 796, Florida Statutes;

KA  *KA*
ETC *[initials]*
JM  *[initials]*

any state, federal, or local whistleblowers acts; any claim for defamation, libel, or slander; any federal, state, or local laws prohibiting employment discrimination; the employment, terms of employment, conditions of employment and separation from employment of Avila by El Toro Loco; any claims arising from alleged harassment, breach of contract, unjust enrichment, quantum merit, intentional infliction of emotional distress, humiliation, embarrassment, economic issues, retaliation, discrimination based on national origin, race, color, sex, religion, age, or disability, negligence or intentionally tortious conduct by El Toro Loco occurring before, during, or after the employment of Avila by El Toro Loco through the day of this Release; and all other claims under federal, state or local statute or ordinance or common law, including, but not limited to, those relating to discrimination or retaliation in employment. This Release also includes past, present, and future health issues and/or injuries that have arisen or may arise from when Avila was employed at El Toro Loco and anything that may in any way affect Avila's ability to work.

The listing of specific types of claims as set forth above is not intended to limit in any way the general and comprehensive scope of this Release from Avila to El Toro Loco. Avila further agrees that it is the express intent of Avila to enter into this full and final settlement and compromise of any and all claims against El Toro Loco, whatsoever, including, but not limited to, those arising out of, or in any way connected with, the employment or engagement of Avila, at any time, from the beginning of the world to the date of execution by Avila of this Agreement. Avila further agrees that she will not hereafter file any claim or charge with any agency, or join in any claim as an individual or as a member of a class in any federal, state or local court or agency in regards to El Toro Loco, but nothing herein shall be construed as any form of a bribe or other hindrance to give truthful testimony pursuant to a subpoena, lawful discovery request, or court order. Avila recognizes that no suit can be filed against El Toro Loco for any claim released as part of this Agreement. By way of execution of this Agreement, Avila swears and affirms that she has been paid all minimum wage and overtime due to her, and no further monies are owed to her from El Toro Loco.

Except for enforcement of this Agreement, if Avila should later initiate or participate in any legal action or proceeding against El Toro Loco, for any claim arising or accruing before and through the effective date of this agreement, which she should not, this Agreement will be conclusive evidence that any such claims have been released.

This Release includes any claims under the ADEA and OWBPA. Avila acknowledges and agrees that this waiver of any right or claim under the ADEA and OWBPA is knowing and voluntary, and specifically agrees as follows: (a) that this Agreement and this waiver is written in a manner which she understands; (b) that this waiver specifically relates to rights or claims under the ADEA and OWBPA; (c) that Avila does not waive any rights or claims under the ADEA and OWBPA that may arise after the date of execution of this Agreement; (d) that Avila waives rights or claims under ADEA and OWBPA in exchange for consideration in addition to anything of value to which she is already entitled; and (e) that Avila is hereby advised in writing to consult with an attorney prior to executing this Agreement.

KA
ETC
JM



El Toro Loco agrees to completely and forever release Avila from any and all claims, known or unknown, including but not limited to claims arising out of Avila's employment with El Toro Loco and her separation therefrom, including any that may arise under contract, tort, or equity. The parties expressly intend this release to reach the maximum extent permitted by the law. However, nothing in this Agreement shall be construed to prevent the Defendants from enforcing their rights under this Agreement.

The Parties intend this Agreement is intended to be a full and complete release of all claims against each other. If the Parties nevertheless initiates a lawsuit against each other in violation of this Agreement, the Parties shall be entitled to damages from one another, including, without limitation, attorneys' fees and costs incurred in enforcing this Agreement, as well as a set off in the amount of the Settlement Funds if the Agreement is breached by Avila.

The parties mutually agree that Avila will not in the future: (a) talk about or otherwise communicate to any third party in a malicious, disparaging or defamatory manner regarding El Toro Loco; or (b) make or authorize to be made any written or oral statement that may disparage the reputation of El Toro Loco. This includes, but is not limited to, communications in any text messages, blogs, websites, or social media such as Twitter, LinkedIn, Instagram, and Facebook or in traditional media, be it orally, in writing, via e-mail or otherwise.

6. **Affirmations.**

AVILA AFFIRMS THAT AFTER PAYMENT OF THE SETTLEMENT FUNDS SHE HAS BEEN PAID AND/OR HAS RECEIVED ALL LEAVE (PAID OR UNPAID), COMPENSATION, WAGES (INCLUDING OVERTIME), BONUSES, COMMISSIONS, REPAYMENT OF EQUITY, AND/OR BENEFITS TO WHICH SHE MAY BE ENTITLED BY VIRTUE OF HER FORMER EMPLOYMENT WITH EL TORO LOCO AND THAT NO OTHER LEAVE (PAID OR UNPAID), COMPENSATION, WAGES, BONUSES, COMMISSIONS AND/OR BENEFITS ARE DUE TO HER.

7. **Resignation and Waiver of Reinstatement/Re-Employment**. Avila agrees and recognizes that her relationship and employment with El Toro Loco has been permanently and irrevocably dissolved. Avila expressly waives reinstatement, re-employment and/or claim of right to employment with El Toro Loco, whatsoever, and agrees that she will not now and will not in the future seek re-employment or independent contractor status with El Toro Loco. Avila further agrees that this Agreement is good and sufficient cause for El Toro Loco to reject any such application for reinstatement or re-employment.

**Neutral Reference**. In the event El Toro Loco is contacted by a prospective employer of Avila, it shall limit information provided to dates of employment and position held only. No comment(s), expressly or impliedly, shall be made regarding Avila's termination and/or eligibility for rehire.

KA  *KA*
ETC *YB*
JM  *JH*

As permitted by law, from the time of Avila's execution of this Agreement, Joacquin Martinez shall not disparage Avila, directly or indirectly, or say anything negative about Avila including, but not limited to, members of the press and media, present and former employees of El Toro Loco, or any other third persons. As permitted by law such non-disparagement shall expressly include any comments, postings or other communications on social media.

8. **Confidentiality**.

The Parties warrant that they have not disclosed any of the terms of this Agreement, or the negotiations related to this Agreement, to anyone other than their spouse, attorneys and relevant tax advisors and consultants. The Parties understand that this Settlement Agreement will be filed in Court. Notwithstanding the filing, the parties represent and agree that (i) they will keep the terms of this Agreement completely confidential, except and unless disclosure is required and compelled by law or as otherwise set forth below, and (ii) if disclosure is compelled by court order, they will disclose only so much information as is necessary for compliance. The Parties agree not to publicize or disclose any of the terms of this Agreement in any manner whatsoever, whether in writing or orally, to any person, directly or indirectly, or by or through any agent or representative, except as necessary to effectuate the terms of the Agreement, other than to the following: (1) their attorneys; (2) their spouse; (3) their accountants and tax consultants; and (4) other persons or entities only if required and compelled by law or lawful court order to do so. With respect to any individuals referred to above to whom the Parties knowingly disclose any information regarding this Agreement or its terms, the Parties agree that they will inform such individuals that the information is strictly confidential and may not be reviewed, discussed or disclosed, orally or in writing with any other person, organization, or entity whatsoever, at any time. In the event any inquiry is made of concerning the allegations in the Action or the Settlement Payments, the Parties shall indicate only that "the claim has been resolved, where El Toro Loco has paid a settlement to Avila" and shall give no other indication of the outcome. Confidentiality is a material part of this Agreement and is intended to be binding upon the parties personally and all agents and other representatives, if appropriate. This covenant not to disclose shall not restrict Avila's ability to enforce or defend the terms of this Agreement.

This Section does not in any way restrict or impede Avila from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

A. In the event that Avila is required by compulsion of legal process to disclose, publicize, or to permit, authorize or instigate the disclosure of this Agreement, in whole or in part, she must notify El Toro Loco in writing at least five (5) business days prior to the disclosure in order to provide El Toro Loco an opportunity to object to such disclosure. Such written notification shall be sent to: Lowell J. Kuvin, Esq., (counsel for El Toro Loco) at his

KA    *KA*
ETC   *YB*
JM    *JM*

email address at lowell@kuvin.law. Avila agrees to reasonably cooperate fully with El Toro Loco if El Toro Loco objects to such disclosure.

   B. The Parties acknowledge and agree that the terms of paragraphs 6 and 9 are a material inducement for the execution of this Agreement. Any breach or dissemination, other than as described above in paragraph 9, and as proven in a court of law, of this Agreement, the terms and conditions hereof, and/or the underlying facts and circumstances of the claims alleged in the Charge will be regarded as a breach of this Agreement and a cause of action shall immediately accrue for damages and injunctive relief. Damages stemming from breach of this provisions in paragraphs 6 and/or 9 of this Agreement shall be liquidated in the amount of $2,000.00. The prevailing party in any such action shall be entitled to its reasonable attorneys' fees and costs from the non-prevailing party in any enforcement action.

   C. Avila represents that: (i) no part of the monies paid pursuant to paragraph 2 of this Agreement is a payment related to sexual harassment or sexual abuse as set forth in Section 162(q) of the Internal Revenue Code; and that (ii) Avila does not contend and is not aware of any facts to suggest Avila has been subjected at any time to any acts of sexual harassment or sexual abuse by El Toro Loco. Avila acknowledges that El Toro Loco has relied on Avila's representations in this paragraph 9(D) in agreeing to make the payment referenced in paragraph 2 of this Agreement. Notwithstanding this confidentiality provision in paragraph 9, and without limiting the scope of the general release in paragraph 6, nothing in paragraph 9 prohibits Avila from disclosing any facts or claims pertaining to incidents of sexual harassment or sexual abuse.

  9. **Non-Admission of Wrongdoing**. The Parties agree that neither this Agreement nor the furnishing of the Settlement Payments as consideration for this Agreement is or shall be deemed or construed at any time for any purpose as an admission by El Toro Loco of any liability or unlawful conduct of any kind.

  10. **Execution of Necessary Documents**. Each party shall, upon the request of the other, execute and re-execute, and acknowledge and deliver this Agreement and any and all papers or documents or other instruments, as may be reasonably necessary to implement the terms hereof with any formalities as may be required, and otherwise shall cooperate to fulfill the terms hereof and to enable the other party to effectuate any of the provisions of this Agreement.

  11. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument. While it is the intention of the Parties to exchange original executed settlement papers, a facsimile signature, a scanned and e-mailed signature, and/or signed copy of this Agreement shall be sufficient for all purposes, including enforcement.

  12. **Governing Law and Enforcement**. This Agreement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of the State of Florida, and shall be subject to the exclusive jurisdiction of the Miami-Dade

KA   *KA*
ETC   *YB*
JM   *JH*

County Circuit Court. Avila expressly consents to personal jurisdiction in that Court. All parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties herein. Should any party to this Agreement be required to enforce the terms of this agreement against a breaching party, upon a proven breach, the prevailing party shall be entitled to her/its reasonable attorneys' fees and costs. Nothing contained herein shall be construed as prohibiting the Parties from pursuing any other remedies available to them for such breach or threatened breach, including, without limitation, the recovery of damages from either party.

13. **Severability**. Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

14. **Headings**. The headings of the provisions herein are intended for convenience only, and the same shall not be, nor be deemed to be, interpretive of the contents of such provision.

15. **Amendment**. This Agreement may not be modified, altered, or changed except upon express written consent of both Parties wherein specific reference is made to this Agreement.

16. **Binding Nature of Agreement**. The terms of this Agreement are contractual, not mere recitals, and may be enforced in Court. Further, this Agreement shall be binding upon the Parties hereto and upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns, and shall inure to the benefit of said parties and each of them and to their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns. Avila expressly warrants and represents that she is the owner of the claims asserted in the Action and has not transferred or assigned, or purported to assign or transfer, any released claim to any person, firm, corporation, association, or entity whatsoever. The Parties agree to indemnify and hold each other harmless against, without any limitations, any and all rights, claims, warranties, demands, debts, obligations, liabilities, costs, court costs, expenses (including attorneys' fees), causes of action or judgments based on or arising out of any such assignment or transfer.

17. **Selective Enforcement**. The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

18. **Copy of Agreement Valid**. The Parties agree that executed copies of this Agreement shall be valid and binding.

KA  *KA*
ETC *[initials]*
JM  *[initials]*

19. **Entire Agreement**. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties, except Avila's continuing post-termination obligations under the Confidentiality and Non-Disclosure Agreement. This Agreement is deemed to have been drafted jointly by the Parties. Any uncertainty or ambiguity shall not be construed for or against any other party based on attribution of drafting to any party. The terms of this Agreement are executed without reliance upon any representations except those contained herein, and the Parties have carefully read this Settlement Agreement and Release and sign the same of their own free will.

20. Avila hereby acknowledges that prior to executing this Agreement, she was advised in writing to consult with an attorney before signing this Agreement.

21. By her signature below, Avila confirms that she understands, accepts and agrees to the terms of this Agreement.

22. The cost of mediation will be borne by El Toro Loco.

**HAVING ELECTED TO EXECUTE THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 2 ABOVE, THE PARTIES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY MIGHT HAVE AGAINST EACH OTHER.**

The parties hereto have executed this Agreement on the date set forth below.

_____
**KATERINE AVILA**
Date: 09/03/2021

**EL TORO LOCO, LLC**
By: _____
Print Name: Yanda Blanco
Title: manager
Date: 9/8/2021

_____
**JOAQUIN MARTINEZ**
Date: 9/8/2021

KA  *KA*
ETC *YB*
JM  *JM*



## Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | Settlement Agreement - v4 |
| **Document created:** | 09/03/2021 14:05:15 |
| **Document pages:** | 9 |
| **Document ID:** | 5deda429a46a4201b43df815b9ca0a35af0bce05 |
| **Document Sent:** | 09/03/2021 14:06:38 UTC |
| **Document Status:** | Signed |
| | 09/03/2021 15:27:20UTC |

| | |
|---|---|
| **Sender:** | office@peregonza.com |
| **Signers:** | katerineavilaalvarez@gmail.com |
| **CC:** | |

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | office@peregonza.com | 09/03/2021 14:05:15 pm UTC | 09/03/2021 14:05:13 pm UTC | 98.203.86.195 |
| SignNow Web Application | Viewed the Document | office@peregonza.com | 09/03/2021 14:05:22 pm UTC | 09/03/2021 14:05:21 pm UTC | 98.203.86.195 |
| SignNow Web Application | Document Saved | office@peregonza.com | 09/03/2021 14:06:34 pm UTC | 09/03/2021 14:06:33 pm UTC | 98.203.86.195 |
| SignNow Web Application | Viewed the Document | katerineavilaalvarez@gmail.com | 09/03/2021 15:25:58 pm UTC | 09/03/2021 15:25:58 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: eea8d17ff8784ded943b | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 04dc812491134181 8bbe | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 380d64b427c74ee58e66 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 7b3cb144dd5e4c59890b | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 9c0bbb5f139d430b97e2 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: f81417cad32e4087a0d5 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 23a6c265b7494e739a38 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 5d0820ab180e4067b70a | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: d2e5d637d3544595bae0 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Signed the Document, Signature ID: 1d7812473f1d4472be84 | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Added a Text | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Document Saved | katerineavilaalvarez@gmail.com | 09/03/2021 15:27:20 pm UTC | 09/03/2021 15:27:19 pm UTC | 66.177.241.161 |
| SignNow Web Application | Viewed the Document | office@peregonza.com | 09/03/2021 15:29:39 pm UTC | 09/03/2021 15:29:39 pm UTC | 98.203.86.195 |